per curiam:
This is a military disability pay claim submitted to the court on cross-motions for summary judgment. Plaintiff, a former captain in the Regular Air Force, was honorably discharged, at his request, on May 7, 1974. He applied to the Air Force Board for the Correction of Military Records (AFBCMR) on September 1, 1974, seeking to have his discharge converted to one for disability retirement. On January 27, 1976, the afbcmr found that no corrective action was warranted. Plaintiff then sued here on May 6, 1980, and the motions followed. The petition seeks disability retirement pay from the date of plaintiffs separation 6 years earlier, to the date of judgment, together with appropriate correction of his records. Defendant would have us affirm the afbcmr decision and, alternatively, pleads laches since plaintiff filed suit one day short of the expiration of the 6-year statute of limitations, which began to run on the date of plaintiffs discharge.
Plaintiff was commissioned in 1967 at 26 years of age and promptly entered pilot training, at which time the first episode involving his medical history with defendant took place. When he started flying he became airsick. His instructor thought plaintiff had blacked out for a second or two while in the air. Plaintiff himself was unaware of this. However, he was reassigned to personnel school and became a personnel officer. He represents that the brief blackout spells continued from time to time. Once, not having eaten breakfast, he felt dizzy and fell down two steps but did not lose consciousness. While stationed in Italy he had one of these episodes while briefing his commander and was sent to the Air Force Hospital in Wiesbaden, Germany, for a thorough examination which took place in May 1972. The neurological examination revealed no abnormalities. The general physical examination was also normal. He was *803 given some trial medication and directed to return for further examination, which he did in July 1972.
Although the general physical and detailed neurological examinations were again normal at the second examination in Wiesbaden, plaintiff was nevertheless diagnosed as having "an abnormal eeg suggestive of seizure disorder,” for which he responded favorably to Dilantin. He was then referred to a Medical Board which recommended that plaintiff be returned to duty for one year of observation and treatment as necessary. It was thought that his condition could be controlled with the drug, Dilantin. Thereafter, while driving his automobile in Yugoslavia, he had a serious accident which he attributes to his dizzy spells or blackouts. He also alleges that there were other episodes in which he had momentary lapses of attention. Examined again at Wiesbaden in January 1974, plaintiffs general physical neurological examinations were normal but he was diagnosed as having a "seizure disorder psychomotor type.” Plaintiffs eeg was "border-line.” Accordingly, plaintiff was sent to the Malcolm Grow Medical Center, Andrews Air Force Base, for further evaluation and processing related to his request for discharge.
Plaintiffs case was presented to an informal Physical Evaluation Board in March 1974. That board held that he was fit for duty. Plaintiff requested a formal hearing and the board directed that a psychiatric evaluation of plaintiff be performed. The board concluded that plaintiff was fit for worldwide service and recommended his return to duty. Plaintiffs case was reviewed by the Physical Review Council on April 17, 1974, and by the Personnel Council of the Secretary of the Air Force on April 23, 1974. Upon review of plaintiffs medical records, these authorities concluded that he was fit for military duty. Thereafter, upon 16 weeks of evaluation at Andrews Air Force Base, plaintiff was honorably discharged on May 7, 1974, at his own request, as heretofore noted.
We will rule now on plaintiffs claim that the Correction Board decision must be set aside as not being based on substantial evidence and for being unlawful because it was arbitrary and capricious in not mandating that plaintiff was entitled to retirement for disability. Plaintiff has a *804 substantial burden here because it is not the court’s responsibility to rule on his degree of disability at the time he resigned from the service. It is our responsibility to see whether the Correction Board decision is sustainable under the substantial evidence rule, and if it is then it is not arbitrary or capricious and cannot be set aside. Under 10 U.S.C. §§ 1201-1221 (1976) the Secretary has the authority to determine fitness for military duty. Judges are not given the task of running the military services. Orloff v. Willoughby, 345 U.S. 83, 93 (1953); Clayton v. United States, 225 Ct.Cl. 593 (1980); Diggs v. United States, 215 Ct. Cl. 1013 (1978).
Plaintiffs claims of disability started promptly with his entry into the Air Force. He was examined repeatedly by competent doctors, spent time in various hospitals and his word was really the only thing to substantiate many of his episodes of claimed disability in the nature of a seizure disorder. Accepting this at face value and independently finding a seizure disorder, the Air Force medical officers nevertheless did not consider he was incapacitated from reasonable performance of military duties. Indeed, as noted by the Surgeon General’s Office, plaintiffs performance was described as "exceptionally fine,” and his alleged momentary and transient lapses of attention not disqualifying. His condition was extensively and thoroughly evaluated with appropriate laboratory procedures and by specialists in psychiatry and neurology and by medical boards over a period of approximately 7 years during which he continued his service. This constituted substantial evidence for the Correction Board’s conclusions.
Plaintiff calls to our attention the fact that he has been given a disability rating by the Veterans Administration, 30 percent for chronic anxiety neurosis and 20 percent for seizure disorder manifested by repeated episodes of altered state of consciousness. This rating is dated June 14,1979. Of course, this determination has no probative value to show plaintiffs condition for military duty at the time of his resignation and discharge in 1974. Nor is the court or the Air Force bound by this decision of the Veterans Administration which operates under different laws and standards and for different purposes than the military when it comes *805 to deciding disability entitlements. Veterans Administration views and actions are entitled to respect and we have considered them, but they are only evidence to be considered along with other evidence and are in no way ultimately determinative of claims for military disability retirement. The awards of the Veterans Administration are in the nature of gratuities by a grateful nation and extend to nonservice-connected disabilities as well as to those believed to be service-connected. The Veterans Administration does not determine fitness for military duty, which is the responsibility of the Secretary and military authorities. Rutherford v. United States, 216 Ct. Cl. 163, 573 F.2d 1224 (1978); Diggs v. United States, supra; Finn v. United States, 212 Ct. Cl. 353, 548 F.2d 340 (1977); Unterberg v. United States, 188 Ct. Cl. 994, 412 F.2d 1341 (1969); Williams v. United States, 186 Ct. Cl. 611, 405 F.2d 890, cert. denied, 396 U.S. 966 (1969); Wood v. United States, 176 Ct. Cl. 737 (1966).
Plaintiff has also given the court the benefit of the views of a highly competent private physician who formerly was a neurologist in the Air Force medical service. He examined plaintiff and gave it as his view that plaintiff suffers from a psychomotor seizure disorder and is totally disabled, requiring medication. Plaintiffs affidavit shows that he is employed 3 days per week in a clerical position in Boston. Nevertheless, with full respect for this opinion, it does not disprove that the Correction Board and the Air Force medical officers reached their decision on substantial evidence as to the degree of plaintiffs disability and fitness for duty. Where reasonable and competent men can reach different conclusions, the decision of the Correction Board is not arbitrary and capricious and is entitled to finality. Knightly v. United States, 227 Ct.Cl. 767 (1981); Sanders v. United States, 219 Ct. Cl. 285, 594 F.2d 804 (1979); Wesolowski v. United States, 174 C. Cl. 682 (1966).
Plaintiffs claim that he was entitled to be placed on the temporary disability retired list by the Air Force is misplaced. A serviceman can be placed on that status only after it is determined that his medical condition renders him unfit for duty, i.e., unable to perform the duties of his *806 rank, grade and position. Plaintiff was never found to be disabled for duty.
Defendant asserts that this plaintiff must fail in his challenge because he waited 6 years, less one day, to file his suit after his claim accrued, and thus laches is a complete bar. Because we have disposed of the claim on the merits of his attack upon the decision of the Air Force Board for the Correction of Military Records, we do not address laches.
it is therefore ordered, upon consideration of the pleadings, the motions for summary judgment, the exhibits, and effective oral argument by counsel, that defendant’s motion for summary judgment is granted. Plaintiffs cross-motion for summary judgment is denied. The petition is dismissed.